[No. B022626. Second Dist., Div. Four. May 4, 1987.]

ENID SHAPERO, Plaintiff and Appellant, v.
MELVYN B. FLIEGEL, et al., Defendants and Respondents.

COUNSEL

Gronemeier, Barker & Huerta, Dale L. Gronemeier and Elbie J. Hickambottom, Jr., for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Robert S. Warren, Scott P. Hoyt and Diane M. Julin for Defendants and Respondents.

OPINION

**WOODS, P. J.**—Enid Shapero (or appellant) appeals from a judgment in favor of Melvyn B. Fliegel (or respondent) arising from an order granting Fliegel's motion for summary judgment in a legal malpractice action.[1] The motion was granted on the ground that the action was barred by the applicable statute of limitations. We affirm.

The relevant facts are as follows:[2]

Beginning in 1976, Shapero retained Fliegel to represent her in a dissolution action from her then-husband Jules Levy (Levy). By the terms of a settlement negotiated in 1977, Levy was to pay Shapero's legal fees. The fees were estimated at $18,000 and were to be paid monthly with the balance due upon the close of escrow on the Levy residence. Subsequently, further negotiations were necessary to reduce the settlement to a written judgment acceptable to both sides, as a result of which Fliegel claimed additional legal fees for a total of $30,000.

Prior to entry of the written judgment in September 1978, a dispute arose between Fliegel and Levy over Fliegel's fees. Consequently, Fliegel decided to obtain a judgment lien on Levy's interest in the escrow proceeds to enforce payment of his fees. Fliegel's motion to enter judgment was set on September 22, 1978.

The day before the hearing, appellant asked Fliegel to delay the hearing for a week to September 29. She told him that escrow would not close until after that date. Fliegel complied.

---

[1]Also sued was Fliegel's law firm, Schwartz, Alschuler, Grossman & Pines (now Alschuler, Grossman & Pines). For literary convenience, we refer to Fliegel in the singular but our references to him also include the law firm where appropriate.

Appellant also sued a second set of attorneys, Fred, Lewin & Behesnilian. These defendants are not involved in the instant appeal.

[2]Appellant contends the evidence is in conflict. We discuss this alleged conflict under part II of this opinion.

At the September 29 hearing, judgment was entered. On October 2, 1978, Fliegel had a copy of the judgment filed with the county recorder's office in the belief that escrow had not yet closed on the Levy residence. On October 3 or 4, however, Fliegel learned that escrow had closed on September 28, the day before judgment was entered.

Fliegel concluded that appellant had intentionally sought to delay entry of judgment so that escrow would close before judgment was entered. Infuriated at what he perceived to be her deception and disloyalty, he called appellant and told her to get another lawyer. He followed up with a letter that said, in essence, he would do no further work on her behalf until he was paid.

Appellant wrote a letter, dated October 19, 1978, at the request of her ex-husband to assist him in defending against Fliegel's attempt to collect the legal fees. In that letter she characterized certain actions by Fliegel as "negligent," expressed her "complete agreement" with Levy that Fliegel's fees were excessive, acknowledged that Fliegel had told her to "get another attorney" and said she was "without counsel." She closed the letter by offering to testify on her ex-husband's behalf and against Fliegel.

Prior to entry of judgment on September 29, 1978, there had been frequent communications between appellant and Fliegel regarding the dissolution action. After October 4, 1978, those communications ceased except for two telephone calls which Fliegel recalled receiving. Appellant was refused assistance each time she called. At a deposition, appellant confirmed that on these occasions Fliegel was still angry over his unpaid fees and not very nice to her.

In 1982, appellant picked up her file from Fliegel and retained the firm of Fred, Lewin & Behesnilian to assist her in collecting money due from Levy.[3]

Appellant filed the instant action for attorney malpractice on March 29, 1985. She then filed a motion for summary adjudication seeking to preclude Fliegel from raising the statute of limitations as a bar to her action. Appellant argued that the statute of limitations had been tolled by the failure of Fliegel to formally withdraw as her attorney of record. Fliegel responded with his own motion for summary judgment raising the four-year statute of limitations on attorney malpractice actions set forth in Code of Civil Procedure section 340.6. On May 20, 1986, Fliegel's motion was granted and appellant's motion denied. The trial court concluded that (1) as a matter of law

[3]Appellant consulted a number of attorneys between 1978 and 1982 for various reasons including a second divorce. The attorney who handled her second divorce also did some related work on the Levy dissolution.

Fliegel did not continue to represent appellant after 1978, so as to toll the statute of limitations; (2) that the minimal contacts between the parties after 1978 did not constitute such representation; and (3) that Fliegel's "of record" status, standing alone, was not continued representation so as to toll the statute. Judgment was entered on June 23, 1986. This appeal followed.

I

Appellant's first contention is that the statute of limitations in this action was tolled by respondent's failure to formally withdraw as attorney of record under the provisions of Code of Civil Procedure section 285.1.[4] This argument is without substantial merit.

The statute of limitations in attorney malpractice actions is found in section 340.6, enacted in 1977, which provides that such action shall be brought "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] .... [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; . . ."

Section 285.1, enacted in 1963, permits an attorney of record in a domestic relations action to withdraw "at any time subsequent to the time when any judgment in such action or proceeding, other than an interlocutory judgment, becomes final, and prior to service upon him of pleadings or motion papers in any proceeding then pending in said cause, by filing a notice of withdrawal."

It is undisputed that Fliegel has never filed a withdrawal under section 285.1. Appellant contends that this failure is tantamount to the continued representation that tolls the running of the statutue of limitations under section 340.6. Whether this is true is a question of first impression in our appellate courts. We conclude that appellant's argument misperceives the statutory purposes of both sections and that the failure to formally withdraw as attorney of record, standing alone, will not toll the statute of limitations under the rubric of continued representation.

Section 285.1 was "designed to protect all persons involved where an attorney who remains as attorney of record after final judgment in a domestic

---

[4] All statutory references are to the Code of Civil Procedure.

relations case and has lost contact with his client, is served with notice of motion for change of custody or modification of alimony or support payments." (*Selected 1963 Legislation: Code of Civil Procedure* (1963) 38 State Bar J. 661.)

 In a letter of June 27, 1963, to then-Governor Edmund G. Brown, the legislative representative of the California State Bar explained the need for the legislation: "Under the law as it now stands, the attorney for either party remains the attorney of record for all subsequent proceedings in a divorce action, and service upon the attorney of record is effective service upon the client. Some relief should be granted in cases where an attorney has completed his professional services to a client and yet years later is required to appear on a supplemental domestic relations type action where he has no information as to his long departed client."[5]

Clearly, the purpose of section 285.1 is to allow an attorney in a domestic relations case, by formal withdrawal, to serve notice to third parties that the attorney-client relationship has terminated. The question that arises here is what effect, if any, this withdrawal section has on the statute of limitations issue of continued representation.

Initially, we note that section 340.6 was enacted 14 years after enactment of section 285.1. The Legislature is presumed to be aware of existing statutes at the time it adopts new legislation. (*Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) If the Legislature had intended the running of the statute of limitations in section 340.6 to be tolled by failure of an attorney to file a withdrawal under section 285.1, it could have said so. We do not believe that the Legislature intended the presence or absence of a formal withdrawal to be dispositive of the continued representation issue.[6] We find support for this position in *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328 [187 Cal.Rptr. 14].

In *Gurkewitz,* the court was asked to decide "when an attorney ceases to represent a client, absent a withdrawal or change of attorneys." (137 Cal.App.3d at p. 333.) The court noted that "[t]he tolling provision in Code of Civil Procedure section 340.6, subdivision (a)(2) is substantially similar to the 'continuous representation' rule created by the New York courts. The

---

[5]A reviewing court may consider correspondence directed to the Governor's office in determining legislative intent. (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 968, fn. 9 [201 Cal.Rptr. 379].)

[6]Nonetheless, a formal withdrawal would certainly be helpful in determining at what point the attorney-client relationship ended. It would seem to be the better practice for the attorney to obtain such a withdrawal when there has been an irreparable breakdown of that relationship.

New York rule in attorney malpractice cases was derived from concepts delineated in medical malpractice decisions." (*Ibid.*)

The New York rule is explained in *Muller* v. *Sturman* (1981) 79 App.Div.2d 482 [437 N.Y.S.2d 205, 208]: "In those cases where the continuous representation doctrine has been applied to attorney malpractice there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney often involving an attempt by the attorney to rectify an alleged act of malpractice [citations]." Further, "application of the continuous representation doctrine in attorney malpractice envisions a relationship between the parties that is marked with trust and confidence. It is a relationship which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems." (*Ibid.*)

Applying this rule of continuity and "quality of the attorney-client relationship," the trial court concluded that, regardless of Fliegel's technical status as appellant's attorney of record, the attorney-client relationship terminated in 1978, and that appellant's action was barred by section 340.6.[7]

This conclusion is supported by the evidence before the trial court. Fliegel terminated the relationship in October 1978. Appellant's October 19, 1978, letter demonstrates an awareness that the relationship had ended. Moreover, her willingness to testify against Fliegel's interests in the fee dispute hardly evinces a relationship of trust and confidence. Additionally, after 1978, appellant could recall only a few inconclusive communications with Fliegel. Finally, in 1982, appellant turned to other lawyers because, as she testified at deposition, Fliegel's continuing ire left her no choice.

This evidence, much of it supplied by appellant, demonstrates conclusively that the trial court's assessment of the situation was correct. The attorney-client relationship terminated in 1978 notwithstanding Fliegel's failure to formally withdraw as counsel of record under section 285.1. We hold that

---

[7]Appellant argues that application of New York authority is inapposite because in those cases, unlike the instant case, there was a finding of a specific date upon which the attorney-client relationship ended. This argument is without merit. The New York decisions cited to us do not turn upon this single factor. Rather, they emphasize that a range of factors should be considered in assessing when the relationship terminated.

Moreover, the finding of a specific date would not help appellant here. The trial court determined the relationship ended in 1979. Section 340.6 provides a maximum of four years in which to file malpractice actions. Appellant's action was not filed until 1985, six years later.

Appellant also argues that the number of contacts alone is not dispositive of whether there has been *continued* representation. The amount of contacts is relevant, however, particularly where, as in the instant case, there has been a sudden decline in that number. However, we are satisfied that the trial court based its decision on the nature of those contacts as well as their number.

such failure, standing alone, does not satisfy the continued representation provision of section 340.6 for the purpose of tolling the running of the statute of limitations.

## II

Appellant further contends that, assuming Fliegel's "of record" status did not toll the running of the statute, there remained factual disputes as to whether there was continued representation up to 1982. She argues that these disputes made summary judgment inappropriate.

█ It is true, of course, that summary judgment should not be granted unless there are no triable issues of material fact. (§ 437c, subd. (c).) In making this assessment, the trial court is to broadly construe the affidavits submitted by the party opposing the motion and narrowly construe those presented by the moving party. *Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 594 [184 Cal.Rptr. 98].) This rule is modified when the party opposing the motion seeks to create triable issues by repudiating his or her own earlier admissions.

Where repudiation occurs " 'the rule of liberal construction loses its efficacy and the granting or denial of the motion for summary judgment depends upon the issues of credibility. Accordingly, when a defendant can establish his defense with the plaintiff's admissions sufficient to pass the strict construction test imposed on the moving party [citation], the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive. [Citations.]' " (*State Farm Mut. Auto. Ins. Co.* v. *Eastman* (1984) 158 Cal.App.3d 562, 573 [204 Cal.Rptr. 827], quoting *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768].)

In the instant case, the factual disputes cited by appellant are wholly the result of her repudiation of her own earlier deposition testimony by subsequent declaration. In that subsequent declaration she states that no fee dispute existed between her and Fliegel; minimizes her support of her ex-husband's efforts to avoid paying Fliegel's fees; claims numerous discussions between her and Fliegel from 1978 to 1982 regarding the dissolution action though she concedes she has no "exact recollection of them" and says that her first inkling of problems with Fliegel did not occur until 1982.

· These statements, as well as others made in her declaration, are contrary to her earlier deposition testimony. Appellant obviously recognized this discrepancy because she actually took pages from her deposition, crossed out her original answers and supplanted with them answers more in keeping with

her later recollection of events before submitting them to the trial court. The trial court properly rejected these emendations.

The judgment is affirmed. Respondent to recover costs.

Kingsley, J., and McClosky, J., concurred.