[No. C013229. Third Dist. Feb. 26, 1993.]

JOYCE HENSLEY, Plaintiff and Appellant, v.
WILLIAM CAIETTI et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*See footnote 1, *post*, page 1168.

**Counsel**

Thomas L. Hodges for Plaintiff and Appellant.

Lewis, Carroll & Bacon, Steven A. Lewis and Kenneth E. Bacon for Defendants and Respondents.

**Opinion**

**BLEASE, Acting P. J.**—In this action for attorney malpractice plaintiff Joyce Hensley appeals from a summary judgment in favor of defendant William Caietti predicated upon the bar of the statute of limitations, Code of Civil Procedure section 340.6. The gist of her claim is that defendant

William Caietti committed malpractice by inducing her to enter into a binding unfavorable marital settlement agreement. She discharged him soon thereafter, more than one year before filing this action, and obtained new counsel. Nonetheless, she contends the trial court erred in failing to toll the limitations period until Caietti received notice that he was discharged as her attorney. She also contends that the statute should have been tolled until judgment was entered in the marital dissolution action.

In the published portion of the opinion[1] we conclude that the limitations period ran from the date Hensley acted upon her decision to discharge Caietti by engaging new counsel, not from the date Caietti received notice of his discharge. We also conclude that Hensley suffered actual injury, sufficient to start the statute running, when she entered into the binding marital settlement agreement.

We will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Caietti represented Hensley in a marital dissolution action. The marital status was terminated, leaving support and property issues for resolution. On September 28, 1989, Caietti and Hensley and her former spouse and his counsel, Sharon Hoyle, attended a settlement conference on these issues. After negotiation they asked the court to record a stipulated settlement agreement. Hoyle put the terms of the stipulation on the record, allocating property and debts, providing for payments to Hensley to equalize the division of community property, waiving spousal support and the shifting of attorney fees and costs, providing for mutual personal restraining orders, and obligating each party to execute implementing documents. After examining the parties under oath the court approved the stipulation. The court informed them that the settlement was effective immediately and directed Hoyle to prepare the judgment.

On November 3, 1989, Hensley met with Caietti to review a proposed judgment. She told him she was distraught during the settlement negotiations because of verbal abuse then inflicted upon her by her husband and she had not been fully aware of the terms of the stipulation. She reviewed the proposed judgment with Caietti and they had a "terrible argument" and she refused to agree to it. Caietti yelled at her to get out of his office. She considered their attorney-client relationship terminated at this point.

Three days later, on November 6, 1989, Hensley asked Pennee Parker to replace Caietti as her attorney. Parker told Hensley that she could not

---

[1] The Reporter of Decisions is directed to publish the opinion except for part III of the Discussion.

represent Hensley unless Caietti executed and filed a substitution of attorney. On November 13, 1989, Hensley executed a substitution of attorney document and Parker sent it by mail to Caietti.

On November 14, 1989, Caietti sent a letter to Hoyle informing her that he had reviewed the proposed judgment with Hensley and that there were a couple of changes that he desired to make and that he would return the redraft to her with the changes. Caietti also asked that Hensley's former spouse provide certain bill statements to her and deliver certain personalty to her that was "overlooked" in the stipulation.

On November 16, 1989, Caietti received Parker's letter and the substitution of attorney document. On the following day Caietti sent Hoyle the proposed judgment with changes. In the accompanying letter he explained that he was unable to obtain Hensley's agreement to the judgment before he was informed that she had secured new counsel. Caietti signed the substitution of attorney on November 20, 1989.

The complaint in this malpractice action was filed November 15, 1990. Caietti moved for summary judgment and the trial court granted it with the following explanation. "The loss occurred at the tim[]e of the stipulation, and was discovered on November 3, 1989. The Statute of Limitations ran November 4, 1990."

DISCUSSION

I

Code of Civil Procedure section 340.6, subdivision (a)(2) provides that the one-year period from discovery of attorney malpractice within which an action may be brought is tolled while the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."[2]

Hensley contends the trial court erred in failing to toll the limitations period under this provision. She argues that Caietti continued to

---

[2]Section 340.6 in pertinent part provides:

"(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury;

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; . . . ."

represent her until November 16, 1989, when he received notification of his discharge from her new attorney, Parker, a date within one year of the filing of the malpractice action. Caietti argues for an earlier date outside the one-year limitations period, fixed by the point at which "the attorney-client relationship disintegrates to the extent that there is no continuity of professional services from which the alleged malpractice stems . . . ." Caietti's argument is persuasive.

■ Code of Civil Procedure section 340.6 does not say when a representation is discontinued. The dispositive issue is whether that is judged from the perspective of the attorney or from the perspective of the client. On this record the latter is the better reading.

In general an attorney "continues to represent" the client in pending litigation until the representation is terminated "by operation of law, withdrawal or discharge." (See 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 85, p. 104.) This implicates the law of agency. (See *id.* at §§ 71-94.) "The same agency principles which permit the attorney to terminate his agency (subject to such control as the court may deem proper), are applicable to the client." (*Id.* § 82, p. 101.) ■ Under the law of agency "[a]uthority created in any manner terminates when either party in any manner manifests to the other dissent to its continuance or, unless otherwise agreed, when the other has notice of dissent." (Rest.2d Agency, § 119.)

"*Time of Termination.* The revocation or renunciation is effective when the principal or agent learns that the other no longer consents to the continuance of the authority. Ordinarily, it is also effective when either party has reason to know of it, in accordance with the rule stated in Section 10, or when a notification has been given, in accordance with the rule stated in Section 11. The parties may, however, agree that the revocation or renunciation shall not occur until there is knowledge of the withdrawal of consent, or they may specify particular acts which will constitute notification.

"Until the time when the manifestation is effective, it can be withdrawn by a counter-manifestation; after such time a manifestation of withdrawal of dissent operates as an offer to enter a new relationship on the terms of the old." (Rest.2d Agency, § 119, com. c.)

Under these principles, Caietti "continue[d] to represent [Hensley] regarding the . . . [dissolution] matter" at least until the day the letter revoking his representation was delivered to his place of business. (See Rest.2d Agency, § 11.) Caietti argues for an earlier date, the date upon which his client viewed the relationship at an end. He reasons as follows.

■ When the client has discovered an attorney's negligence the purpose of Code of Civil Procedure section 340.6 is to toll the period of limitations during the time that the client cannot reasonably be expected to initiate a malpractice action because to do so would disrupt an ongoing attorney-client relationship. Once the client unequivocally decides that the relationship is over application of the tolling provision can no longer serve its purpose and it should be applied no further.

Caietti relies upon the following passage from *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691]: "Section 340.6 and its legislative history make clear that once a client has been injured by an adverse judgment, the limitations period commences and is not tolled by filing an appeal absent continuous representation by the trial attorney. (See 340.6, subd. (a)(2).) This 'continuous representation' rule was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.)"

This conclusion is supported by an article from the California State Bar Journal from which the language used in subdivision (a)(2) of Code of Civil Procedure section 340.6 was taken. (See Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 Cal. State Bar J. 22, 26 (*Panacea*); Mallen, *An Examination of a Statute of Limitations for Lawyers* (1978) 53 Cal. State Bar J. 166.)

Caietti also relies upon several opinions that view Code of Civil Procedure section 340.6, subdivision (a)(2) as an embodiment of the "continuous representation" rule developed under New York common law. (See, e.g., *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328 [187 Cal.Rptr. 14].) This view finds support in the *Panacea* article: "The proviso of subdivision 2 adopts in California the continuous representation rule as it exists in other jurisdictions," citing three New York cases. (Mallen, *supra, Panacea*, 52 Cal. State Bar J. at p. 24, fn. omitted.)

Caietti places principal reliance upon *Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842 [236 Cal.Rptr. 696] which provides the following synopsis of the "continuous representation" rule. "The New York rule is explained in *Muller* v. *Sturman* (1981) 79 App.Div.2d 482 [437 N.Y.S.2d 205, 208]: 'In those cases where the continuous representation doctrine has been applied to attorney malpractice there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney

often involving an attempt by the attorney to rectify an alleged act of malpractice [citations].' Further, 'application of the continuous representation doctrine in attorney malpractice envisions a relationship between the parties that is marked with trust and confidence. It is a relationship which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems.' (*Ibid.*)" (*Id.* at p. 848.)

Caietti argues that this provides the standard for termination of the attorney-client relationship under Code of Civil Procedure section 340.6, subdivision (a)(2). (See *Shapero, supra,* 191 Cal.App.3d at p. 848.)[3] He suggests that "the attorney continues to represent" the client until the point at which the client decides the relationship is over.

■ We agree that the question of representation should be viewed from the perspective of the client because that tailors the rule in Code of Civil Procedure section 340.6, subdivision (a)(2) to the purpose it serves. (See Civ. Code, § 3510.)

■ Hensley did state that in her view the attorney-client relationship was over at the point of her acrimonious departure from Caietti's office. However, bare opinions are variable in firmness and susceptible to reconsideration. We need not decide whether such an opinion ends the period of representation until that opinion is acted upon. Hensley's opinion was acted upon more than a year before she filed this action. She asked Parker to serve as replacement counsel on November 6, 1989. At this point the die was cast and the tolling afforded under Code of Civil Procedure section 340.6, subdivision (a)(2) ended. (See *Croce* v. *Kurnit* (S.D.N.Y. 1982) 565 F.Supp. 884, 892, applying New York law, when the client consulted independent counsel "he was no longer the disadvantaged client unable to question or to pursue remedies for perceived wrongs" hence "continuous representation" tolling ended.)

The client has an absolute right to discharge counsel. (See *Gage* v. *Atwater* (1902) 136 Cal. 170 [68 P. 581]; 1 Witkin, Cal. Procedure, *supra,*

---

[3]In *Shapero* the client contended that the limitations period was tolled for several years because the defendant attorney had not acted to withdraw as attorney of record, under Code of Civil Procedure section 285.1, for purposes of service of process in the dissolution of marriage proceeding. (191 Cal.App.3d at p. 846.) The *Shapero* opinion upholds summary judgment for the attorney. (*Id.* at pp. 848-849.) The premise of the summary judgment, endorsed on appeal, was: "regardless of [the defendant attorney's] technical status as . . . attorney of record, the attorney-client relationship terminated in 1978 . . . ." (*Id.* at p. 848.) Caietti's position does not find definitive support in this conclusion. The holding could be distinguished on the line between termination of the actual agency relationship between attorney and client and termination of status as attorney of record for purposes of service of process by third parties. The latter presents a different question, that of ostensible agency. The limitations period under section 340.6, subdivision (a)(2) is an *inter se* question, and, if governed by agency principles, sensibly should turn on the termination of actual agency.

§ 82, at p. 101.) Having discovered the alleged negligent act and unmistakably acted to end the attorney-client relationship, Hensley has no equitable claim for a limitations period longer than that afforded a person who discovers negligence after the discharge or withdrawal of counsel. The period of tolling should not turn upon the fortuity of the time of delivery of notice of discharge to counsel, a matter entirely within Hensley's control. (Cf., *Laird* v. *Blacker, supra,* 2 Cal.4th at p. 614.)

Hensley's alternate argument is that Caietti's action in sending his letter of November 17, 1989, to Hoyle revived or prolonged the tolling period. She relies upon *Gurkewitz, supra,* which held the tolling period was extended during the time in which an attorney assisted the client by negotiating with opposing counsel for a reduction of costs in the litigation. "We hold that, so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative." (137 Cal.App.3d at p. 333.) The circumstances here materially differ from those in Gurkewitz. The act of sending the letter of November 17, 1989, did not resurrect the attorney-client relationship for purposes of Code of Civil Procedure section 340.6, subdivision (a)(2).

*Gurkewitz* added a caveat to its holding. "We do not mean to suggest that any contact between an attorney and his client amounts to representation. Had defendants merely forwarded the [cost bill], that act would not have constituted representation. But here the attorney negotiated with opposing counsel and in fact did effect a reduction in the bill for his client. That contact with opposing counsel amounted to representation." (137 Cal.App.3d at p. 334.) Caietti's letter transmitted the previously drafted proposed judgment and simultaneously informed Hoyle that he had been discharged. The latter provision precluded Hoyle from taking it as an act of ostensible agency binding upon Hensley. Nothing in these circumstances could have induced Hensley to view the moribund relationship as continuing and deterred her from pursuing her malpractice remedy. Accordingly, posting the letter of November 17th did not count as an act of representation for purposes of Code of Civil Procedure section 340.6, subdivision (a)(2).

For all of these reasons, the trial court did not err in refusing to toll the period of limitations under Code of Civil Procedure section 340.6, subdivision (a)(2).

## II

Hensley next contends that the trial court erred in concluding that she "sustained actual injury" at the point she entered into the marital settlement agreement for purposes of tolling under subdivision (a)(1) of Code of Civil Procedure section 340.6. She argues that she did not sustain

actual injury until the effective date of the ensuing judgment. The trial court's conclusion is correct.

Hensley argues that the point is governed by *Laird, supra,* 2 Cal.4th 606. The plaintiff client, a script writer, retained the defendants to sue a television production company for damages for misappropriation of one of her scripts. The suit was dismissed for lack of prosecution and she filed the malpractice action 19 months thereafter. She contended that Code of Civil Procedure section 340.6 was tolled until she dismissed her appeal. *Laird* rejected this contention saying "the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal." (2 Cal.4th at p. 615.) Hensley argues this sentence is dispositive of her claims.

*Laird* is inapposite as it cannot reasonably be construed to have addressed the point whether events other than entry of an adverse judgment can satisfy the criteria of actual injury. A decision is not authority for propositions not considered. (E.g., *People* v. *Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577].) In *Laird* no issue was tendered whether some event other than the judgment or the occurrence of finality of the judgment sufficed as "actual injury." Moreover, the precedent upon which *Laird* principally relies, *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], is one in which the Supreme Court returned the question of actual accrual before judgment of the malpractice cause of action to the trial court for a factual determination.

Hensley does cite an apposite authority, *Turley* v. *Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441]. The plaintiff client signed a marital termination agreement in June 1982, allegedly because of negligent advice concerning division of property and spousal support given by the defendant counsel. (*Id.* at pp. 588-589.) The agreement was approved by the court in an interlocutory judgment entered in October of that year. (*Ibid.*) She filed the malpractice lawsuit in June 1987, contending that she had suffered no actual damage until six months after January 1983, the date of entry of the final judgment in the marital dissolution action. (*Ibid.*)

The plaintiff client in *Turley* included the additional six months within the tolling period, claiming she could have moved for relief under Code of Civil Procedure section 473 during this time. (230 Cal.App.3d at pp. 588-589.) The *Turley* opinion answers that she had suffered actual injury from the property division when she executed the agreement and injury regarding spousal support when the interlocutory judgment was entered. (*Id.* at pp. 593-594.) The latter branch of the statement is explained by the following footnote. "The Agreement was approved by the court in the interlocutory

judgment of dissolution but only the spousal support, custody and visitation provisions were incorporated into the judgment. . . .

"To the extent the spousal support provisions were incorporated into the interlocutory judgment of dissolution, they became the order of the court. The merged Agreement provisions were superseded by the judgment and ceased to be of independent legal significance. Thus, the obligations imposed were not those imposed by contract, but those imposed by decree, and enforceable as such. [Citation.] However, even if the merger delayed Turley's actual injury regarding spousal support until entry of the interlocutory judgment in October 1982, her complaint was still filed more than four years beyond that date." (230 Cal.App.3d at p. 593, fn. 2.)

Hensley submits, "It is clear from the above note, that the court recognized that *Turley's* injury became actual on the date of the judgment, not on the date of the marital settlement agreement." What is clear is that the *Turley* opinion avoids any resolution of the point with respect to components of a marital settlement agreement which are later incorporated into a judgment. However, the answer to that question is indicated by the holding in *Turley* that actual injury is suffered at the time of entry into the agreement with respect to provisions that are not later incorporated.

We agree with this holding. Negligent legal advice which induces a client to enter into a binding contract resolving marital property and support issues results in actual injury at the point of entry. ■ Entering a contract is a jural act which alters the legal relations of the parties and creates an obligation. (See *FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 388 [282 Cal.Rptr. 508].) The tortious inducement to enter into a contract which imposes noncontingent obligations is actionable at the time of contracting.

■ Here the contract allegedly unfairly deprived Hensley of her fair share of community property. The facts adduced at the summary judgment proceeding compel the conclusion that the contractual allocation was effective immediately. The parties obtained possessory rights to the allocated chattels and realty and Hensley's former spouse was obliged to make a partial payment of the monetary offset "forthwith." The trial court, without correction, declared that "the stipulation is effective and will be effective as of this morning."

That leaves the question whether the consideration that some or all of the provisions of a marital settlement agreement are subsequently incorporated in a judgment "delays" actual injury until the judgment takes effect. We

discern no reason why that should be the case. The injury is a consequence of the altered jural relations effected by entry into the contract. The fact that at a later point obligations imposed as a result of a contract become subject to a different means of enforcement, i.e., contempt or an action on the judgment (see, e.g., Cal. Marital Termination Agreements (Cont.Ed.Bar 1992) § 5.4; Cal. Family Law Service (1986) § 33:10), does not delay the injury which is attributable to the imposition of the obligations. The consideration that the injury attributable to entry into the contract may be remediable by the attack on the contract does not render the injury harmless. (See *Laird, supra,* 2 Cal.4th at pp. 615-617.)

For all the foregoing reasons, the trial court did not err in concluding that Hensley suffered actual injury on the date of entry into the marital settlement agreement.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Scotland, J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1993.

---

*See footnote 1, *ante,* page 1168.