*1491
 
 Opinion
 

 COTTLE, P. J.
 

 I. Introduction
 

 Plaintiff appeals from a judgment entered after the trial court determined, on a summary judgment motion, that plaintiff’s attorney malpractice action was time barred. The applicable statute of limitations (Code Civ. Proc., § 340.6)
 
 [1]
 
 is tolled during that period “[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . .” (§ 340.6, subd. (a)(2).) In the court below, defendant asserted that his representation of plaintiff ceased, as a matter of law, more than one year before plaintiffs action was filed, as plaintiff lost confidence in him and consulted with another attorney. Plaintiff, on the other hand, claimed that defendant continued to represent her until 11 months before she filed suit. As the evidence presented at the summary judgment hearing discloses a triable issue of material fact regarding the date on which defendant’s representation of plaintiff ended, summary judgment was not properly granted. Accordingly, we shall reverse the judgment.
 

 II. Facts and Procedural History
 

 In November 1982 plaintiff’s mother executed a last will and testament, leaving her Morgan Hill home, which was essentially the whole of her estate, to plaintiff, Dorthia L. Worthington, “for the duration of her life or until she remarries, whichever occurs first, . . . with the remainder over to my children above-named who survive me at the time of my death. [Plaintiff] also has the power to sell the property prior to the expiration of her life
 
 *1492
 
 estate determinable upon terms and conditions acceptable to her. However, the net proceeds from the sale shall be divided equally among my children above-named who survive me at the time of my death.” The will named plaintiff as executrix. Plaintiff’s mother died on May 5, 1988, survived by six children.
 

 On May 7,1988, plaintiff retained attorney Ernest Rusconi
 
 [2]
 
 to probate her mother’s estate. Plaintiff alleges Rusconi “put [his] interests ahead of [her] interests [] by recommending and advising that she would have to give up her life estate. [He] concealed from her at that time the fact that, by her giving up her life estate, [he] would make more money in probating the estate and secure a source of funds for the payment of [his] fees.” As a result of Rusconi “causing] her to renounce her interest in the life estate,” plaintiff alleges she was damaged in a sum in excess of $150,000.
 

 The record on appeal shows that plaintiff, on January 26, 1989, signed a “Partial Disclaimer of Interest in Realty” that was filed in the Santa Clara County Superior Court on January 30, 1989.
 
 [3]
 
 The disclaimer, after describing the property, states: “The portion that I disclaim pursuant to the provisions of §§ 275, et seq., California Probate Code, consists of my life estate in said realty, but I retain a term of one year only from the date of this instrument in this real property. ...[][] I retain the equal one-sixth (1/6) interest that I have with my brothers and sisters pursuant to said Paragraph Fifth of the will.”
 

 Two months later, plaintiff signed an agreement with her siblings, essentially reiterating the provisions in the disclaimer of interest in realty. The agreement provided that plaintiff could live in the house rent free until it was sold or for one year, whichever occurred sooner, and would receive a one-sixth undivided interest in the property, in exchange for giving up her life estate in the property.
 

 Plaintiff continued to live in the Morgan Hill home through early 1991. At that time two of her siblings discovered that she had turned down a $300,000 offer on the home. They filed a petition for suspension of powers and removal of executrix and for appointment of a successor personal representative, pursuant to Probate Code section 8500. In response to these actions by her siblings, plaintiff sought out new counsel, Douglas Allen.
 

 Rusconi states, in a declaration submitted in support of his summary judgment motion, that Allen called his office on or about March 14, 1991.
 
 *1493
 
 When Rusconi attempted to return the call, he was unable to reach Allen. He did talk to plaintiff, however. Furthermore, according to his declaration, “[subsequent to March 14, 1991, [he] performed no legal services for plaintiff and had no further contact with her.”
 

 This last statement in Rusconi’s declaration under penalty of perjury is flatly contradicted by a letter Rusconi sent to plaintiff on April 5, 1991.
 
 [4]
 
 In the letter he makes no mention of a change of counsel. Instead, he suggests to plaintiff how they should proceed with the probate action, as follows: “I have some new thoughts which I have not discussed with you, so will do so in this letter. I believe it would be a good idea to close the estate and distribute the property to the 7 heirs, so you are all joint owners. Then when you come to sell the house, you could sell directly without any court supervision or court proceedings. Since there is no money in the estate to pay your fees and my fees, we would get a note secured by a deed of trust on the property payable in two years or on sale of the property, whichever occurred sooner. We would ask the court to approve 10% interest on the note, which is the amount of interest that judgments bear. [][] By closing the estate, we would resolve the problems of the claims your brothers and sisters are making that you should be paying rent now. I believe we can justify not paying rent because of your duties to keep up the property for if vacant, even the fire insurance would be canceled, and also that it is to the benefit of all the heirs to not sell at a lower price for real estate prices are now beginning to move up. [f] In that connection, I have not heard from any realtor and am wondering if you have listed it again, and whether that realtor is showing the property. []Q Please give me your thoughts regarding this new proposal after you have had a chance to think it over. Please let me hear from you in about a week.”
 

 On May 1, 1991, plaintiff and her new attorney signed a substitution of attorneys form. Rusconi signed it the next day. The form was then filed in the probate court on May 14, 1991.
 

 Eleven months later—on April 2, 1992—plaintiff filed the instant legal malpractice action against Rusconi and his firm. In depositions taken in connection with the malpractice lawsuit, plaintiff admitted that she sought alternate counsel because she was dissatisfied with the way Rusconi was
 
 *1494
 
 handling her case. She felt she “had been misrepresented” by him with respect to her “lifetime estate.”
 
 [5]
 

 Rusconi moved for summary judgment, claiming that plaintiff’s action was time barred pursuant to section 340.6. Although subdivision (a)(2) tolls the statute of limitations for the period the attorney continues to represent the client, Rusconi asserted his representation of plaintiff ceased when, on or about March 14, 1991, Attorney Allen called his office. Plaintiff argued in opposition to the motion that Rusconi’s representation continued until May 14, 1991, when the formal substitution of attorney form was filed. The trial court found Rusconi’s position to be the more persuasive and granted summary judgment. From the ensuing judgment, plaintiff appeals.
 

 III. Discussion
 

 A.
 
 Summary Judgment: Standard of Review
 

 Defendant Rusconi’s contention that the granting of a summary judgment motion is “left to the sound discretion of the trial court” and “will not be disturbed on appeal in the absence of a clear showing of abuse of discretion” is patently incorrect. (See
 
 Barisich
 
 v.
 
 Lewis
 
 (1990) 226 Cal.App.3d 12, 14-16 [275 Cal.Rptr. 331].) As this court explained in
 
 AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank,
 
 “[s]ince a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal . . . .”
 
 (AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank
 
 (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].)
 

 The matter to be determined by the appellate court is “whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself.”
 
 (Parker
 
 v.
 
 Twentieth Century-Fox Film Corp.
 
 (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) “The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” (§ 437c, subd. (c).)
 

 B.
 
 Tolling of the Statute of Limitations: Continuing Representation
 

 The sole issue on appeal is whether Rusconi established as a matter of law that his representation of plaintiff ceased more than a year before she
 
 *1495
 
 filed suit. Relying primarily upon the Third District Court of Appeal’s opinion in
 
 Hensley
 
 v.
 
 Caietti
 
 (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837], Rusconi asserts that the malpractice limitations period commenced in this case no later than March 14, 1991, when plaintiff consulted another attorney after losing confidence in him.
 

 As noted earlier, section 340.6, subdivision (a)(2) tolls the attorney malpractice limitations period for as long as the attorney “continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.” The purpose of this “continuous representation” rule, the Supreme Court observed in
 
 Laird
 
 v.
 
 Blacker
 
 (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], is to “ ‘avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.’ ”
 
 (Id.
 
 at p. 618, quoting Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.)
 

 In
 
 Hensley,
 
 the court determined that the question of representation should be viewed from the
 
 client’s
 
 perspective. Once the client believes the relationship with his or her attorney is over and acts on that belief by hiring replacement counsel, the purpose of the tolling provision, which is to prevent disruption of the attorney-client relationship, is no longer served. Under these circumstances, the court held, “application of the tolling provision . . . should be applied no further.”
 
 (Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at p. 1171.)
 

 The facts in
 
 Hensley
 
 supported this finding. Defendant attorney represented plaintiff in a dissolution of marriage action. The attorney’s alleged malpractice consisted of convincing plaintiff to enter into a marital settlement agreement that was not to her liking. After the terms of the stipulation were put on the record and the court examined the parties under oath, it approved the settlement agreement effective immediately and ordered defendant to prepare the judgment. When plaintiff met with defendant on November 3, 1989, to go over the judgment, she complained that she had not been aware of the terms recited in open court because of her husband’s verbal abuse. Plaintiff and defendant then had a “terrible argument,” plaintiff refused to sign the judgment, and defendant yelled at her to get out of his office. Plaintiff considered the relationship over at that time, and hired replacement counsel within three days.
 

 The defendant attorney in
 
 Hensley
 
 argued that section 340.6, subdivision (a)(2) is a statutory embodiment of the “continuous representation" rule first
 
 *1496
 
 developed under New York common law and, hence, “the standard for termination of the attorney-client relationship under Code of Civil Procedure section 340.6, subdivision (a)(2)” should be the same as the standard that has been used in various New York and Ohio cases.
 
 (Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at p. 1172.) The
 
 Hensley
 
 court agreed.
 
 (Ibid.)
 

 Under the “New York rule” “ ‘continuous representation’ ’’ lasts only so long as the attorney-client relationship is “ ‘ “ongoing, continuous, developing and dependent . . . , marked with trust and confidence,” ’ ” and involves a “ ‘ “continuity of the professional services from which the alleged malpractice stems.” ’ ”
 
 (Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at pp. 1171-1172, citing
 
 Shapero
 
 v.
 
 Fliegel
 
 (1987) 191 Cal.App.3d 842, 848 [236 Cal.Rptr. 696]; see also
 
 Rubinstein
 
 v.
 
 Barnes
 
 (1987) 195 Cal.App.3d 276, 283 [240 Cal.Rptr. 535];
 
 Gurkewitz
 
 v.
 
 Haberman
 
 (1982) 137 Cal.App.3d 328, 333 [187 Cal.Rptr. 14].)
 

 The facts in
 
 Hensley
 
 were undisputed: the client stated that in her view, “the . . . relationship was over at the point of her acrimonious departure from Caietti’s office.”
 
 (Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at p. 1172.) By subsequently asking another attorney to represent her, the court found, she had acted “unmistakably” to end the relationship.
 
 (Id.
 
 at p. 1173.) Thus, the purpose of the tolling provision—to avoid unnecessarily disrupting the attorney-client relationship—no longer applied. Accordingly, based on the facts of that case, the court held “that the question of representation should be viewed from the perspective of the client. . . .”
 
 (Id.
 
 at p. 1172.)
 

 However, while cases construing “the New York rule” are helpful in our analysis of section 340.6, subdivision (a)(2), they are by no means binding. Ours is a statutory provision to which ordinary rules of statutory construction apply. In contrast, ‘the continuous representation doctrines in New York and Ohio,” the First District Court of Appeal recently observed in
 
 O’Neill
 
 v.
 
 Tichy
 
 (1993) 19 Cal.App.4th 114, 120 [25 Cal.Rptr.2d 162], “exist by virtue of common law rather than statute.” According to one well-respected commentator, the New York rule was adopted as “a direct reaction to the illogical requirement of the occurrence rule which compels the client to sue his attorney even though the relationship continues and there has not been and may never be any damage.” (2 Mallen & Smith, Legal Malpractice (3d ed. 1989) Statutes of Limitations, § 18.12, p. 115.)
 

 Hence, before we look to sister-state authorities construing common law continuous representation rules, we must first look to the statute itself. If the language of a statute is clear, its plain meaning should be followed.
 
 (Great Lakes Properties, Inc.
 
 v.
 
 City of El Segundo
 
 (1977) 19 Cal.3d 152, 155 [137
 
 *1497
 
 Cal.Rptr. 154, 561 P.2d 244].) “When a statute is unambiguous, ‘“there is no need for construction, and courts should not indulge in it.” ’ ”
 
 (People
 
 v.
 
 King
 
 (1992) 3 Cal.App.4th 882, 887 [4 Cal.Rptr.2d 723].) “In construing statutory provisions, a court may not speculate that the Legislature meant something other than what it said or rewrite a statute to make it express an intention not expressed therein.”
 
 (In re Jodi B.
 
 (1991) 227 Cal.App.3d 1322, 1328 [278 Cal.Rptr. 242].)
 

 Section 340.6, subdivision (a)(2) does not state that the statute of limitations is tolled so long as, from the client’s perspective, “the attorney continues to represent [him or her] regarding the specific subject matter in which the alleged wrongful act or omission occurred.” Neither, of course, does it state that the statute is tolled if, from the attorney’s perspective, the representation has ceased. Rather, the statutory language requires an objective determination of whether the representation has ended.
 

 “Ordinarily, an attorney’s representation is not completed until the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal.” (2 Mallen & Smith, Legal Malpractice, Statutes of Limitations, supra, § 18.12, p. 120.) “The rule is that, for purposes of the statute of limitations, the attorney’s representation is concluded when the parties so agree, and that result does not depend upon formal termination, such as withdrawing as counsel of record.”
 
 (Id.
 
 atp. 121; accord,
 
 Shapero
 
 v.
 
 Fliegel, supra,
 
 191 Cal.App.3d at p. 848 [the failure to formally withdraw as attorney of record, standing alone, will not toll the statute of limitations under the rubric of continued representation];
 
 Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at p. 1173 [“[t]he period of tolling should not turn upon the fortuity of the time of delivery of notice of discharge to counsel . . .”].)
 

 Applying an objective standard to determine whether an attorney’s representation has ended would have resulted in the same conclusion reached by the
 
 Hensley
 
 court in that case. The attorney there ordered the client out of his office, the client believed the relationship was over, and a new attorney was retained within three days. These objective criteria establish the mutual termination of the attorney-client relationship, In the instant case, in contrast, the attorney-client relationship was not in obvious jeopardy. Although plaintiff admitted she had lost confidence and trust in her attorney by the time she first met with Mr. Allen, she did not manifest a desire to end Rusconi’s representation of her at that point. Furthermore, “‘trust and confidence,’ ” while arguably part of the New York rule, “are not stated requirements of the continuous representation tolling provision of section
 
 *1498
 
 340.6, subdivision (a)(2).”
 
 (O’Neill
 
 v.
 
 Tichy, supra,
 
 19 Cal.App.4th at p. 120.)
 
 [6]
 

 Continuity of representation ultimately depends, not on the client’s subjective beliefs, but rather on evidence of an ongoing
 
 mutual
 
 relationship and of activities in furtherance of the relationship.
 
 [7]
 
 Here plaintiff provided evidence of the ongoing nature of her attorney-client relationship with Rusconi—his April 5, 1991, letter advising her how to proceed on the probate action. Although not every contact between an attorney and his or her client will amount to representation
 
 (Gurkewitz
 
 v.
 
 Haberman, supra,
 
 137 Cal.App.3d at p. 334),
 
 [8]
 
 the language Rusconi employed in his April 5th letter clearly manifested an ongoing mutual relationship and the giving of legal advice in furtherance of that relationship. Rusconi proposed, for example, “We would ask the court to approve 10% interest on the note . . . .” He then suggests that by closing the estate, “we would resolve the . . . claims your brothers and sisters are making . . . .” As her advocate, Rusconi opined, “I believe we can justify not paying rent because . . . .”
 

 In summary, we disagree with Rusconi’s contention, based on
 
 Hensley,
 
 “that the attorney-client relationship ends when there is a lack of trust or confidence and a belief on the part of the client that the relationship has terminated.” We believe that a better approach is to analyze the facts from an
 
 *1499
 
 objective point of view. If this analysis discloses, as here, a triable issue of material fact, summary judgment may not be granted.
 

 Accordingly, the judgment is reversed. Costs on appeal are awarded to plaintiff.
 

 Elia, J., and Bamattre-Manoukian, J., concurred.
 

 Respondents’ petition for review by the Supreme Court was denied January 25, 1995. Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.
 

 [1]
 

 All further statutory references are to the Code of Civil Procedure unless otherwise specified. Section 340.6 provides: “(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [1] (1) The plaintiff has not sustained actual injury; [1] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [1] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and fi[] (4) The plaintiff is under a legal or physical disability which restricts the plaintiffs ability to commence legal action. H] (b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event.”
 

 [2]
 

 His law firm, Rusconi, Foster, Thomas & Pipal, is also named as a defendant.
 

 [3]
 

 Client does not recall signing the disclaimer document.
 

 [4]
 

 As a general rule, declarations lodged at a hearing on a motion for summary judgment that are inconsistent with evidence obtained in the course of discovery are to be disregarded. (See e.g.,
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10];
 
 Leasman
 
 v.
 
 Beech Aircraft Corp.
 
 (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768]; cf.
 
 Price
 
 v.
 
 Wells Fargo Bank
 
 (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735].)
 

 [5]
 

 In the probate action, client and her new counsel attempted to revoke client’s disclaimer of her interest in the life estate. The probate court, however, ruled that the disclaimer was irrevocable, having become effective upon filing. In an unpublished opinion
 
 (Worthington
 
 v.
 
 Monroe
 
 (Oct. 22, 1992) H009334), this court affirmed the decision of the probate court.
 

 [6]
 

 In
 
 O’Neill
 
 v.
 
 Tichy,
 
 the court “confronted [a] situation of clients who suspect[ed] their attorney [of committing] malpractice [and retained a] malpractice counsel, ... yet continued] to utilize their attorney to perform services related to the matter in which the malpractice [was] suspected.” (19 Cal.App.4th at p. 120.) The court held that “so long as the client permits the attorney to continue representing the client regarding the specific subject matter in which the alleged negligence occurred,” the statute of limitations is tolled.
 
 (Id.
 
 at p. 121.) Since consulting another attorney is not tantamount to ending a prior relationship, the court will not use that occurrence as a benchmark which, standing alone, signals the termination of the attorney and client's relationship.
 

 [7]
 

 For example, in
 
 Gurkewitz, supra,
 
 the underlying judgment against the clients became final on November 24, 1978. The costs on appeal, however, remained in controversy. By a letter'to opposing counsel on December 20, 1978, the clients’ attorney sought an amended memorandum of costs reflecting “ ‘our various conversations over the past several weeks . . . .’’’On March 23, 1979, the attorney reported to clients that he had successfully negotiated a reduction in costs from the $1,532.27 originally set to $1,261.03. On appeal the court held that these letters manifested continuing representation of the client. “Had defendants merely forwarded the bill . . . , that act would not have constituted representation. But here the attorney negotiated with opposing counsel and in fact did effect a reduction in the bill for his client.” Accordingly, the complaint filed November 26, 1979, was timely.
 
 (Gurkewitz
 
 v.
 
 Haberman, supra,
 
 137 Cal.App.3d at pp. 332, 334.)
 

 [8]
 

 The
 
 Hensley
 
 court, for example, properly found that a letter sent by plaintiff’s counsel to opposing counsel regarding the proposed judgment and informing opposing counsel that his client had secured new counsel did not revive or prolong the tolling period after plaintiff had “unmistakably acted to end the attorney-client relationship . . . .”
 
 (Hensley
 
 v.
 
 Caietti, supra,
 
 13 Cal.App.4th at p. 1173.)