[No. B079776. Second Dist., Div. Four. Dec. 27, 1995.]

SIMON TAUB et al., Plaintiffs and Appellants, v.
FIRST STATE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Musick, Peeler & Garrett, Harry W. R. Chamberlain II and Anne Yeager Higgins for Plaintiffs and Appellants.

Gabriel, Herman & Peretz, Dean B. Herman and Peter Schwartz for Defendant and Respondent.

## OPINION

## VOGEL (C. S.), J.—

### INTRODUCTION

In 1972-1973, an attorney, while practicing law as a law corporation, allegedly committed malpractice. In 1981, the attorney affiliated with a law firm. In 1986, the attorney was sued for the professional negligence allegedly committed in 1972-1973 and sought coverage under a "claims made" policy then in effect which had been issued to the firm with which he affiliated *after* the alleged negligence had occurred. The insurer denied coverage. In a subsequent declaratory relief action, the trial court granted summary judgment in favor of the insurer, finding no duty to defend or to indemnify. We affirm. We find that the insurance policy does not cover the alleged malpractice because it was not committed in the conduct of the business of the firm for whose benefit the policy was issued.

### FACTUAL AND PROCEDURAL BACKGROUND

An understanding of the present action necessitates analysis of three antecedent lawsuits. We set forth those events in a sequential manner. Evidence of all of the following was presented to the trial court in the summary judgment proceeding from which the present appeal is taken.

### The Moore-Winchell Dissolution Proceeding

The claim of legal malpractice arises out of Simon Taub's (Taub) representation of Tessie Moore (Moore) in the marital dissolution proceeding initiated by her husband Paul Winchell.

In 1972, Taub, practicing law as Simon Taub, a law corporation, commenced representation of Moore.[1] One of the marital assets was April Enterprises, Inc., the entity through which Winchell, an actor and ventriloquist, conducted his career. The corporation possessed, inter alia, a contract with KTTV and Metromedia which included syndication rights for the *Winchell-Mahoney Time* television show.

At the trial of the dissolution proceeding, the court valued the stock in April Enterprises, Inc. at $3,000. The court awarded the stock to Winchell and Moore received an offset of $1,500. The court entered judgment in the dissolution action in 1973. No appeal was taken therefrom.

---

[1] For ease of reading, we refer to Taub in the singular but our references to him also include his law corporation where appropriate.

*Winchell's Lawsuit Against KTTV and Metromedia*

In 1976, Winchell sued KTTV and Metromedia. The gist of his lawsuit was that the defendants had improperly destroyed the tapes of his television shows. The defense initially prevailed when the trial court granted it judgment on the pleadings and nonsuit but those decisions were reversed in *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805 [195 Cal.Rptr. 421], an opinion which remanded the cause for a trial.

*Taub Affiliates With Hayes & Hume*

In November 1981, Taub became affiliated with the law firm of Hayes & Hume. Taub's agreement with the firm provided it would "provide coverage for [him] under their policy with First State."

*Winchell's Lawsuit Draws in Taub and Moore*

During Taub's tenure with Hayes & Hume, Winchell prevailed on his appeal, thereby reviving his action against KTTV and Metromedia. Accordingly, the adversaries in that action renewed discovery. In February or March of 1986, counsel for KTTV and Metromedia contacted Taub and asked if Taub was Moore's attorney because counsel wanted to depose her. Taub replied he was her lawyer and that he would reach her. Taub contacted Moore and represented her at her April 1986 deposition.

Shortly after the deposition, Taub agreed to represent Moore in an action against Winchell based upon a claim that Winchell had failed to disclose the existence of the syndication rights, rights Moore allegedly did not learn about until her April 1986 deposition. Moore signed a contingency agreement with Taub.

In July 1986, Winchell prevailed in the action against the television defendants. The jury awarded April Enterprises, Inc., $17.8 million in compensatory and punitive damages.

In August of 1986, Moore discharged Taub, who had not yet filed any pleadings on her behalf, and retained other counsel to represent her against her former husband. Thereafter, Moore's new attorney, Robert Kahn, initiated litigation. Moore's claim against Winchell was ultimately settled in September 1988 for approximately $300,000.

*Moore Sues Taub*

Moore sued Taub for legal malpractice in November 1986. Moore's original complaint alleged: "[Moore] did not sustain actual injury until

August, 1986. [Taub] continue [*sic*] to represent [Moore] regarding the specific subject matter in which the alleged wrongful act or omission occurred." Moore's first amended complaint averred that Taub negligently failed to discover and value the community asset of the television syndication rights—the subject matter of Winchell's action against the television defendants. The pleading alleges: "[Taub] continued to represent [Moore] regarding the specific subject matter in which the alleged wrongful act or omission occurred until August, 1986 when [Moore] retained her present counsel."[2]

Taub sought coverage under several policies. The insurers who had covered him from 1972 to 1979 denied coverage because "no claim was made during these policy periods." Hayes & Hume tendered the matter to two of its insurers, First State Insurance Company (First State) and Lawyers' Mutual Insurance Company (Lawyers' Mutual). First State declined coverage but Lawyers' Mutual agreed to defend, subject to a reservation of rights. (The particulars of First State's policy will be set forth later.)

*Taub Moves for Summary Judgment Against Moore*

Because Moore's malpractice lawsuit was filed in 1986 but was centered upon Taub's representation of her in 1972-1973, one of the disputed issues was whether or not her claim was barred by the statute of limitations. To support a defense summary judgment motion filed based, in part, upon the theory that Moore's claim was time-barred, Taub executed a declaration averring that from "August 1973, until early 1986, I had no communication with Mrs. Moore regarding *any of her legal matters. . . .* My next communication with Mrs. Moore was in April 1986, when, *at her request,* I attended her deposition in the *April Enterprises* v. *KTTV* case, *at no fee. . . .* Some time after her deposition, Mrs. Moore asked me to represent her in a suit [against her former husband]." (Italics added.) A year prior to executing the declaration, Taub had testified in a similar vein at a deposition where he had explained that after the final judgment of dissolution of the Moore-Winchell marriage had been entered, he performed no further legal services for Moore until 1986.

Moore's responsive declaration did *not* contradict Taub's assertions that from 1973 to 1986, he had not discussed any legal matters with her. That is, she never affirmatively stated Taub had continued to be her attorney after the dissolution proceeding had been concluded. Instead, Moore merely asserted:

---

[2]Before the lawsuit was filed, Kahn wrote Taub that he was considering filing a malpractice suit based upon Taub's alleged "failure to perform any meaningful discovery in the dissolution proceedings."

"No other attorney represented me in *Winchell* v. *Winchell*, from 1972 until August of 1986, when I retained my present counsel [Robert Kahn]." Moore further claimed that "Taub represented [her] at the [April 1986] deposition" and that "Taub undertook to represent [her] regarding this claim against [her former husband]." She claimed Taub had asked to represent her in suing Winchell and that she retained him to do so.

Moore's declaration was consistent with deposition testimony she had given the year before executing the declaration. She had testified that Taub had only represented her from 1972 to 1973 and that thereafter she had had no contact with him until 1986.

The trial court denied Taub's summary judgment motion on several grounds.

*Moore Continues but Then Settles Her Action Against Taub*

In a trial brief submitted the next year on the issue of the statute of limitations, Moore amplified her claim of malpractice against Taub. She claimed that he "negligently failed to obtain and review Winchell's written contracts with KTTV" which included the syndication rights; that Taub's failure to investigate caused Taub not "to secure an award that would have *preserved* [Moore's] community property interest in the syndication rights[;] . . . consequently the syndication rights were not considered in the dissolution proceedings, and Winchell obtained 100% of the syndication rights, without the syndication rights being valued or divided." (Italics in original.)

Additionally, Moore's trial brief raised several theories as to why Taub's statute of limitations defense lacked merit although she conceded that notwithstanding the theory employed, Taub's alleged malpractice occurred in 1973. These theories included that the statute had been tolled until 1988 when she suffered actual injury because it was not until then that Winchell received satisfaction of his judgment against the television defendants; that the statute had been tolled until 1986 because until that point Taub had concealed the malpractice; and that the statute had been tolled because Taub "continuously represented [her] from 1972 to 1986, as the term is used in [Code of Civil Procedure] § 340.6(a)(2) or [Taub is] estopped from denying continuous representation." Moore offered no evidence to support her claim of continuous representation but merely argued: "In family law, since jurisdiction is ongoing, clients think of their divorce attorney as their attorney until they actually hire a new attorney. [Moore] never changed attorneys . . . . [B]y undertaking the task of representing [Moore in 1986] against Winchell in the same case regarding an issue of the same marital property, [Taub] acknowledged [he] still represented [Moore]."

None of these issues was ever adjudicated and resolved because, in 1991, Moore settled her legal malpractice action for $800,000. Lawyers' Mutual paid $375,000 and Taub paid $425,000. Additional moneys were expended defending against the action.

*Taub and Lawyers' Mutual Sue First State*

Shortly after the settlement of Moore's action, Taub assigned his rights under the First State policy to Lawyers' Mutual. Taub and Lawyers' Mutual agreed to jointly pursue an action against First State to recapture the moneys paid to Moore and the costs of defending against Moore's action and filed a complaint for declaratory relief and breach of contract to do so.

*The First State Policy*

The First State policy under which Taub sought coverage was in effect from February 1985 to February 1986. As resolution of the coverage issue requires analysis of the particulars of First State's policy, we now set forth its pertinent provisions.

The declarations page of the First State policy identifies the policy as a "Claims Made Policy"[3] and states the named insured is Hayes & Hume.

The insuring clause states that First State will pay on behalf of the insured "claims first made against the Insured during the Policy Period" "*by reason of any act, error or omission in professional services* rendered or which should have been rendered by the Insured or by any other person for whose acts, errors or omissions the Insured is legally responsible . . . provided always that such act, error or omission . . . happens: (a) during the Policy Period; or (b) *prior to the Policy Period.*"[4] (Italics added.)

The following policy definitions are relevant to the present dispute.

---

[3]Insurance Code section 11580.01 requires that all professional liability policies issued on a claims-made basis conspicuously so state on the policy. This is to warn purchasers that the policy will only govern claims made when the policy is still in force, as opposed to an occurrence policy which would govern claims made at any time as long as the claim is based upon an act occurring during the policy period.

[4]In ways not relevant to this dispute, the policy limits coverage for acts occurring prior to the policy's issuance. Those limitations are that "prior to the inception date of this policy or, in respect of any Named Insured added to the coverage afforded under this Policy subsequent to the inception date of this Policy, prior to such Named Insured's inclusion hereunder; [¶] (i) the Insured did not give notice to any prior insurer of any such act, error, [or] omission . . . ; [¶] (ii) the firm's management committee or governing body, howsoever designated, or any member thereof designated in the application, had no reasonable basis to believe that any Insured had breached a professional duty; [¶] (iii) there is no prior policy or policies which provide insurance for such liability or claim."

"Professional Services" means "all services rendered or which should have been rendered for others: 1. by the Insured in the Insured's capacity as a lawyer . . . *in the conduct of the firm's business.*" (Italics added.) Hayes & Hume declined to purchase the option which would have expanded the definition of "professional services" to include (1) legal work undertaken "outside the conduct of the firm's business" or (2) work performed as an officer of any charitable enterprise, public body or business enterprise other than the law firm. If Hayes & Hume had elected those options, coverage would have been provided for services which were by definition not related to the firm's business if the services had been "undertaken with the prior written knowledge and consent of the Named Insured."

The policy defined "Insured" as: "1. the Named Insured; 2. *any person* or professional legal corporation, *not defined as a Named Insured, but who* or which was, is now, or hereafter *becomes an employee (as lawyer or otherwise) of, or lawyer 'of counsel' to the Named Insured* or Predecessor Firm(s)."[5] (Italics added.)

The final policy provision of significance to this dispute is the "Extended Claims Reporting Period" provision. It provides that if the insurer decides either to cancel or to not renew the policy, the policy "shall extend to apply to claims first made against the Insured subsequent to the effective date of cancellation or nonrenewal, but only by reason of any act, error or omission or personal injury in professional services rendered . . . before such applicable cancellation or termination date." This provision is significant because Moore did not assert her malpractice claim against Taub until after the policy had expired in February 1986. Thus, this provision allows Taub to seek coverage for his claim *assuming that the policy otherwise covers this claim.* (First State has never disputed the applicability of this provision.)

*The Trial Court Grants Summary Judgment to First State*

After the discovery had been conducted, the parties filed cross-motions for summary judgment. Evidence establishing all of the facts recited above was presented. Additionally, First State presented a declaration from Kahn, the attorney who represented Moore in the malpractice suit against Taub. Kahn's declaration explained that in Moore's action against Taub, Moore did not claim that she suffered any damage because of any act or omission committed by Taub between 1974 to 1986 but instead that her claim was based upon Taub's negligence causing damage prior to 1974.

---

[5]The policy also includes the following within the definition of insured: "[A]ny former owner, partner, officer, director or stockholder employee of the firm or Predecessor Firm(s) solely while acting in a professional capacity on behalf of such firm or firm(s) [and] any owner, partner, officer, director or stockholder employee of the firm or Predecessor Firm(s) who has retired from the practice of law or has entered the judicial system, but only for those professional services rendered prior to the date of the retirement from such firm or firm(s)."

The trial court ruled in favor of First State. In pertinent part, its ruling states: "The Court finds that there is no triable issue of material fact and that said First State Insurance Company is entitled to judgment as a matter of law on its contention that it had neither a duty to defend nor a duty to indemnify either Simon Taub individually or Simon Taub, a professional law corporation, in the underlying litigation entitled 'Moore v. Taub.' [¶] 2.2 As a matter of law, there is no ambiguity in the First State policy language defining the duties and obligations of First State. . . . [¶] 2.3 First State is entitled to a finding that it is not obligated to defend or indemnify Taub, as a matter of law, because the complaint in the Moore v. Taub action and the facts supporting the allegations therein do not constitute allegations of acts, errors or omissions in 'professional services' which fall within the ambit of the Insuring Clauses of the First State policy. As a matter of law, Plaintiff has failed to produce evidence that the First State policy issued to Hayes & Hume in 1985 and expiring February 15, 1986 was in fact intended to provide coverage for acts, errors or omissions that were committed in 1972 or 1973. Neither the fact that the Plaintiff in the underlying action considered Taub to continue as her lawyer nor that Taub himself stated that he was her lawyer in February of 19[86] trigger any coverage under a policy that expired in that month since no act or omission occurred during that time unless it could be said that the failure to remediate the underlying failure to investigate constituted such an act or omission. We conclude as a matter of law that such is not the case. [¶] 2.4 Conversely, the motion of Plaintiff for summary judgment is denied because, as a matter of law, there is no basis for the granting of such motion in view of the fact that Defendant is entitled to such judgment."

This appeal by Taub and Lawyers' Mutual follows.

## DISCUSSION

■ Our discussion begins, as it must, with an analysis of the specific provisions of the First State policy.

The policy invoked coverage for claims arising out of "any act, error or omission in professional services" by the Hayes & Hume firm, including any lawyer employed by the firm or any lawyer "of counsel" to the firm. "Professional services" is limited to legal work by a covered individual "*in the conduct of the firm's business*." This intent to limit coverage to work done on behalf of the firm is further illustrated by the fact that First State extended options—options which Hayes & Hume declined—to enlarge the coverage to legal work done "outside of the firm's business" or legal work for other entities such as charitable organizations or public bodies. While it is true the

policy afforded coverage for "claims made" during the policy period regardless of when the event occurred which formed the basis of the claim, the claim still had to be based upon legal representation undertaken in the conduct of the business of the firm, to wit, Hayes & Hume. In sum, First State did not provide unqualified coverage to its insured for professional negligence regardless of the identity of the entity upon whose behalf the acts were done but instead limited coverage to claims based upon legal services performed in the conduct of Hayes & Hume's business.[6]

Moore's suit against Taub was *not* based upon the claim that Taub had committed professional negligence "in the conduct of the . . . business" of Hayes & Hume. Moore's theory—as set forth in her complaint, her opposition to Taub's summary judgment motion, and her trial brief—was that Taub committed malpractice when representing her in 1972-1973 by failing to discover the syndication rights which were the basis of Winchell's subsequent action against the television defendants. Accordingly, First State's policy, which was in effect from February 1985 to February 1986, did not and could not afford coverage for Taub's actions in 1972-1973. The policy merely afforded coverage for claims made for acts done in the conduct of the business of Hayes & Hume prior to the policy's expiration on February 14, 1986.

In an effort to avoid this conclusion, Taub and Lawyers' Mutual urge that Moore had claimed that Taub had continued to represent her until 1986. This "fact" would ostensibly bring Taub's alleged malpractice within the period of his affiliation with Hayes & Hume and thereby trigger potential coverage by the First State policy. The factual predicate of this claim is incorrect. To the extent that Moore even raised the concept of continued representation in the course of suing Taub for malpractice—be that in her pleadings or her trial brief—it was done *solely* to defeat Taub's claim that her action was barred by the statute of limitations. (See, e.g., *International Engine Parts, Inc. v Feddersen & Co.* (1995) 9 Cal.4th 606, 630-631 [38 Cal.Rptr.2d 150, 888 P.2d 1279] [statute of limitations is tolled while attorney continues to represent the client].) Moore *never* claimed that Taub continued to represent her after the conclusion of the dissolution proceeding and that, in so doing, committed professional negligence which damaged her. In fact, Moore and Taub consistently advanced the same position—in deposition testimony and in declarations—that after 1973, Taub no longer provided legal assistance to Moore and that their professional relationship did not resume until April 1986, *two months after the First State policy expired,* when Taub represented

---

[6]In the trial court, Taub and Lawyers' Mutual abandoned the claim that coverage was afforded to Taub under the "predecessor firm" provision of the policy.

her at the KTTV deposition and later agreed to represent her in suing Winchell.[7]

In a similar vein, there is no merit to appellants' argument that Taub was under a continuing duty to cure the problem(s) caused by his negligence and that his failure to do so while affiliated with Hayes & Hume triggered coverage under the First State policy. The duty to cure presupposes the attorney-client relationship is ongoing. (See, e.g., *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1165 [217 Cal.Rptr. 89].) In the present case, the record unequivocally established that the Taub-Moore attorney-client relationship ended in 1973.

Nor can there be any significance to the fact that Taub, when receiving the phone call from KTTV and Metromedia in February 1986 about scheduling Moore's deposition, stated he was her attorney. Putting aside the issue of whether a lawyer's subjective belief, uncommunicated to a client with whom he has not had contact in over 10 years, is sufficient to reinstitute an attorney-client relationship, even a cursory review of Moore's pleadings and other legal memoranda makes clear that her claims against Moore were based on his representation in 1972-1973, *not* on any subsequent failure to cure that problem, be that in February 1986 or at any other point potentially covered by First State.

Lastly, Taub and Lawyers' Mutual urge that the italicized phrase in the following provision in the policy required First State to defend: "[T]he Company shall defend any claim against the Insured seeking damages to which this insurance applies *even if any of the allegations of the claim are groundless, false or fraudulent.*" (Italics added.) The argument fails. The provision is just one example of the principle that the duty to defend is broader than the duty to indemnify. The provision prevents an insurer from

---

[7]Citing to Code of Civil Procedure section 285.1, appellants make a half-hearted argument that Taub continued to represent Moore because he never formally withdrew as counsel of record in the dissolution proceeding. The argument fails. The section allows an attorney of record to formally withdraw from a dissolution proceeding after the judgment has become final by filing a notice of withdrawal. This division had occasion to examine the section's legislative history in the context of deciding whether the failure to file such a formal withdrawal resulted in a continued representation by counsel so as to toll the statute of limitations in a legal malpractice lawsuit. We explained: "[T]he purpose of section 285.1 is to allow an attorney in a domestic relations case, by formal withdrawal, to serve notice to third parties that the attorney-client relationship has terminated." (*Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 847 [236 Cal.Rptr. 696].) We concluded that the attorney-client relationship had terminated the year counsel ceased to perform legal services for the client, notwithstanding his failure to formally withdraw as counsel of record. (*Id.* at pp. 848-849.) It therefore follows that given the evidence proffered by both Taub and Moore that after 1973 they had no contact until 1986, Taub's failure to formally withdraw as counsel of record to Moore is of no legal significance.

refusing to defend based upon the assertion that the insured would ultimately prevail and not be held liable. This provision exists because "[a]n insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought." (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1086 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics in original.)

Appellants would have us believe that First State improperly denied coverage because it concluded Moore's claim against Taub was "groundless, false or fraudulent" (e.g., Moore could not prevail in an action against Taub). Not so. Appellants overlook the preceding clause in the provision: "[T]he Company shall defend any claim against the Insured . . . to which this insurance applies . . . ." That is, the duty to defend, although broad, is not unlimited. The duty to defend is measured by the nature and kinds of risks covered by the policy. If the evidence establishes that there is *no* possibility of coverage, there is no duty to defend. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) In this matter, First State properly denied coverage because its policy simply did not apply to Moore's claim because Taub's alleged professional negligence fell outside of the definition of the professional services covered by the policy.

In conclusion, the record presented to the trial court established as a matter of law that First State neither had a duty to defend nor to indemnify Taub because Moore's claim was not one of the risks against which it insured. The trial court properly granted summary judgment to First State.

DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Klein (Brett), J.,* concurred.

Appellants' petition for review by the Supreme Court was denied April 18, 1996.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.