Filed 5/5/15  Chargin v. Maynard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS CHARGIN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DOUGLAS SCOTT MAYNARD et al.,<br><br>    Defendants and Respondents. | H039499<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV217640) |

In this appeal, we consider whether the trial court properly granted summary judgment on a complaint for professional negligence based on the expiration of the applicable statute of limitations set forth in Code of Civil Procedure section 340.6.[1] Appellant Thomas Chargin was involved in litigation in his capacity as the successor trustee of the Joseph A. Chargin III Revocable Living Trust (Trust) in which he was represented by respondents Douglas Scott Maynard, Patrick Whitehorn, and the Law Offices of Maynard & Hogan (hereafter collectively defendants).  In January 2011, the trial court issued an order adverse to Chargin and he blamed defendants for that result. Chargin retained substitute counsel, executing a substitution of attorney form on January 25, 2011.  The substitution of attorney form was transmitted to defendants on January 26, 2011, with a request that it be executed and returned, along with Chargin's file, as soon as possible.  The fully-executed substitution form was filed with the court on February 2, 2011.  Chargin's complaint for professional negligence was filed on January 27, 2012.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

The trial court granted defendants' motion for summary judgment. In its order, the trial court found Chargin was aware of the facts constituting defendants' alleged negligence no later than January 7, 2011 and that, although defendants' continuing representation of Chargin tolled the statute of limitations, their representation of him ended no later than January 25 or 26, 2011 when Chargin transmitted to them an executed substitution of attorney form.

On appeal, Chargin argues there was a triable issue of fact as to the date on which defendants' representation of him ended. Alternatively, he argues that defendants should be equitably estopped from asserting the defense of the statute of limitations based on their delay in executing the substitution of attorney form and returning his file to newly-retained counsel.

We find no merit in either argument and shall affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Chargin was named successor trustee of the "Joseph A. Chargin III Revocable Living Trust." In 2009, Chargin retained Maynard to represent him in his capacity as successor trustee of the Trust in litigation brought by Chargin's siblings[2] (hereafter the beneficiaries) relating to his management of the Trust.

At a December 23, 2010 hearing, the trial court sustained the beneficiaries objections to Chargin's petition for settlement of account of approval of trustee and attorney fees. In its written order, filed January 5, 2011, the trial court surcharged Chargin for (1) "$47,285.00 for attorney and 'executor' fees set forth in the account which have already been paid and not substantiated"; (2) "$337.50 for . . . accountant fees . . . for the 'Trust Accounting' "; (3) "$23,734.82 for disbursements for which [Chargin] has not provided adequate documentation in support thereof, and $275.32 for

---

[2] Gregory C. Chargin and Joseph A. Chargin IV brought the action against Chargin in their capacity as beneficiaries of the Trust.

2

disbursements that [Chargin], individually, is responsible for paying"; and (4) a total of $34,246.43 in attorney fees and costs related to the beneficiaries' objections.

Following the entry of this order, Chargin met with Maynard on January 7, 2011 and again on January 21, 2011, to discuss the trial court's order and to discuss the status of the case. At the January 7 meeting, Chargin asked Maynard why certain documents from Wells Fargo bank had not been provided to the court and why he was responsible for paying the beneficiaries' attorney fees. At the January 21 meeting, Chargin and Maynard discussed the total amount of payments surcharged to Chargin and discussed what steps should be taken in the case going forward. Maynard advised Chargin he would try to work something out with the beneficiaries related to a plan to sell the house in which Chargin was residing. That same day, Maynard sent Chargin the draft of a letter he intended to send to the beneficiaries' attorney discussing this plan.

On January 24, 2011, Chargin first met with Patrick Kohlmann to discuss his willingness to substitute in as counsel in the ongoing trust litigation. Chargin and Kohlmann signed a substitution of attorney form the following day, and Kohlmann sent, by fax and mail, the substitution form to Maynard on January 26. In his cover letter, Kohlmann asked that Maynard sign and return the form as soon as possible and indicated he would send a courier to Maynard's office that afternoon to pick up Chargin's file. Kohlmann called Maynard's office that afternoon and was informed by a legal secretary that Maynard and the other attorneys were not in the office that day. She advised Kohlmann it would be several days before the file could be transferred. Kohlmann believes he finally received the file between January 31 and February 2, 2011 because that was the day he filed the fully-executed substitution of attorney form with the trial court.

On January 27, 2012, Chargin filed a complaint against defendants in the Santa Clara County Superior Court, setting forth a single cause of action for professional negligence. The complaint alleges that defendants "failed to exercise reasonable care in

3

the representation of . . . Chargin's interests, as Successor Trustee, in the matter of In re The Joseph A. Chargin III Revocable Living Trust, . . . in which numerous challenges and objections were filed against . . . Chargin by the beneficiaries of the Trust. Defendants . . . negligently failed to respond appropriately to the objections and failed to seek an evidentiary hearing, thereby allowing the allegations against Chargin to go uncontested. . . . [¶] As a direct and proximate result of the aforesaid negligence, Plaintiff Chargin was assessed with a highly unfavorable order on January 5, 2011, by the Probate Court. The Honorable Thomas Cain not only sustained the objections of the Objectors and Beneficiaries, but also surcharged Plaintiff and assessed attorneys [*sic*] fees against him resulting in damages of at least $184,668.42. [¶] Defendants represented Plaintiff until February 2, 2011, which tolled the statute of limitations until said date."

Defendants moved for summary judgment on the ground that the applicable one-year statute of limitations began to run no later than January 25, 2011, when Chargin executed the substitution of attorney form with Kohlmann and thus had expired when the complaint was filed on January 27, 2012. In his opposition, Chargin argued there was a triable issue of fact as to when the statute of limitations began to run since Maynard failed to promptly execute and return the substitution of attorney form to Kohlmann along with his client file.

Following a hearing, the trial court granted the motion and entered judgment in favor of defendants. In its order granting summary judgment, the trial court found that defendants' representation of Chargin ended no later than January 25 or 26, 2011 and thus the complaint filed on January 27, 2012, was untimely.

## II. DISCUSSION

Chargin argues the trial court erred in granting summary judgment because he presented evidence in opposition to the motion which established triable issues of material fact. He disputes he directed defendants to stop working on his case pending further instruction. Although Chargin retained Kohlmann as his counsel on January 25,

4

he intended to have defendants continue to represent him until the substitution of attorney form was executed and returned along with his file.

A. *Summary judgment principles and standard of review on appeal*

A summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A defendant seeking summary judgment meets his burden by showing that an element of the plaintiff's cause of action cannot be established or that a complete defense to the cause of action exists and cannot be successfully contested by the plaintiff. "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or . . . defense . . . ." (*Id.*, subd. (p)(2).) "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ." (*Id.*, subd. (c).)

On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.) "We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373.) We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the operative complaint and answer since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing establishes facts which negate the opponent's claim and justifies a judgment in the moving party's favor. When the moving party makes a prima facie showing, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Hamburg v. Wal-Mart Stores, Inc.* (2004)

5

116 Cal.App.4th 497, 503.) In performing these steps, we view the evidence in the light most favorable to the party opposing the motion; and we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64.)

### B. *Applicable statute of limitations and tolling*

"The applicable statute of limitations for legal malpractice claims is [Code of Civil Procedure] section 340.6." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 110.) Section 340.6 provides in pertinent part that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] . . . [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340.6, subd. (a)(2).)

"Under California law, the statute of limitations for attorney malpractice claims arising from a given matter is tolled for the duration of the attorney's representation of the client in that matter. (Code Civ. Proc., § 340.6, subd. (a)(2).)" (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 505.) "The purpose of this 'continuous representation' rule, the Supreme Court observed in *Laird v. Blacker* (1992) 2 Cal.4th 606, is to ' "avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the

6

statutory period has expired." ' " (*Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1495 (*Worthington*).)

Section 340.6 does not expressly define continuous representation. In *Worthington*, *supra*, 29 Cal.App.4th at page 1497, this court determined that " '[o]rdinarily, an attorney's representation is not completed until the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal.' [Citation.] 'The rule is that, for purposes of the statute of limitations, the attorney's representation is concluded when the parties so agree, and that result does not depend upon formal termination, such as withdrawing as counsel of record.' " We further held that the standard for determining when an attorney's representation has ended is an *objective* standard. (*Ibid.*) "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing mutual relationship and of activities in furtherance of the relationship." (*Id.* at p. 1498.)

Where the attorney unilaterally withdraws or abandons the client, "the representation ends when the *client actually has or reasonably should have no expectation that the attorney will provide further legal services*." (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 30 (*Gonzalez*), italics added.) "That may occur upon the attorney's express notification to the client . . . , or, if the attorney remains silent, may be inferred from the circumstances." (*Id.* at pp. 30-31.) "After a client has no reasonable expectation that the attorney will provide further legal services . . . the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end." (*Id.* at p. 31.)

C.      *Analysis*

Here, defendants had the initial burden of establishing that Chargin filed his complaint more than a year after he discovered or should have discovered the facts constituting the alleged wrongful conduct. (§§ 340.6, subd. (a)(2), 437c, subd. (p)(1).)

After independently reviewing the evidence, we conclude that defendants satisfied that burden.

Chargin's cause of action for professional negligence was premised on his allegations that defendants "failed to exercise reasonable care in the representation of . . . Chargin's interests, as Successor Trustee, in the matter of In re The Joseph A. Chargin III Revocable Living Trust, . . . in which numerous challenges and objections were filed against . . . Chargin by the beneficiaries of the Trust. Defendants . . . negligently failed to respond appropriately to the objections and failed to seek an evidentiary hearing, thereby allowing the allegations against Chargin to go uncontested."

Defendants presented evidence that Chargin was aware of the facts underlying these allegations no later than January 7, 2011, when Chargin met with Maynard at defendants' office to discuss the adverse order. That evidence included Maynard's declaration, Chargin's deposition testimony and his own declaration in which he described discussing, at that January 7 meeting, his "displeasure regarding . . . the order requiring [him] to pay attorney's [*sic*] fees, . . . [why] certain evidence had not been submitted . . . , and [why] [he] had to prepare an accounting that was 'to date,' rather than just to the timeframe . . . specified at the hearing." Defendants thus made a prima facie showing that Chargin knew by January 7, 2011, that defendants were negligent in their representation of him.

Defendants also made a prima facie showing that, although they continued to represent Chargin after that January 7 meeting, their continued representation of him ended no later than January 26, 2011. Chargin conceded he retained Kohlmann to represent him in the ongoing litigation relating to the Trust on January 25, 2011 and he and Kohlmann executed the substitution of attorney form on that date. In his deposition, Chargin admitted that when he signed the substitution of attorney form, he "had no intention of going back to [defendants] for any further representation in the trust matter" and acknowledged that he was "essentially firing [defendants] at [that] point." At a

8

minimum, defendants' representation of Chargin was at an end when the substitution form, signed by Chargin and Kohlmann, was transmitted to them on January 26, 2011, with the request that it be signed and returned as soon as possible. Chargin could have "no reasonable expectation that [defendants] [would] provide further legal services" after that. (*Gonzalez*, *supra*, 140 Cal.App.4th at p. 31.)

Even if Chargin subjectively believed that defendants continued to represent him until they returned the substitution of attorney form and his file, it is well-established that "[c]ontinuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Worthington*, *supra*, 29 Cal.App.4th at p. 1498.) Chargin's deposition testimony and his declaration submitted in opposition to defendants' motion for summary judgment established that there was no evidence of "an ongoing *mutual* relationship" or of "activities in furtherance of the relationship" after he executed the substitution of attorney form and caused it to be transmitted to defendants. (*Ibid*.)

Defendants presented evidence that Chargin did not file his lawsuit against them until January 27, 2012, more than a year after he was aware of the facts underlying his cause of action and more than a year following the end of the tolling period attributable to their continuing representation of him. The prima facie showing that the cause of action was barred by the one-year statute of limitations set forth in section 340.6 shifted the burden to Chargin to raise a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)

The only evidence submitted by Chargin regarding the end of the tolling period consists of the fact that the substitution form and his client file was not returned by defendants until, at the latest, February 2, 2011. However, this evidence is not sufficient to create a triable issue of fact as to when defendants' representation of him ended. Once Chargin executed the substitution form and caused it to be transmitted to defendants, informing them that he had fired them and retained new counsel, Chargin either had or

9

reasonably should have had no expectation that defendants would provide further legal services to him. "After a client has no reasonable expectation that the attorney will provide further legal services, however, the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end." (*Gonzalez*, *supra*, 140 Cal.App.4th at p. 31.) Moreover, there is no evidence after January 26, 2011, of "an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Worthington*, *supra*, 29 Cal.App.4th at p. 1498.)

In sum, Chargin's admissions establish that the representation ended no later than January 26, 2011. He did not file his lawsuit until January 27, 2012. Because he failed to raise a triable issue of material fact about whether the statute of limitations was tolled beyond January 26, 2011, the trial court properly granted summary judgment in favor of defendants.

### D. *Equitable estoppels*

In his opening brief, Chargin argues in the alternative that the judgment against him must be reversed on the ground that defendants should be equitably estopped from asserting that the tolling period ended on or before January 26, 2011, since it was their delay in returning the substitution of attorney form and his file that prevented his new attorney from representing him until the beginning of February. He admits he did not raise this theory in his opposition to defendants' summary judgment motion, either in his papers or at the hearing on the motion.

Defendants failed to address this argument in their respondents' brief and, in his reply, Chargin pounces on that omission as a concession of the argument's merit. We disagree.

As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal. Appealing parties must adhere to the theory or theories on which their cases were tried. (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241; *Brown v. Boren*

10

(1999) 74 Cal.App.4th 1303, 1316.)  This rule is based on the notion that it would be unfair to both the trial court and the opposing litigants to permit a change of theory on appeal.  (*Brown v. Boren*, *supra*, at p. 1316.)  The appellate court may deviate from the general rule and address new theories on appeal "when the issue presented involves purely a legal question, on an *uncontroverted record and requires no factual determinations . . . .*"  (*Mattco Forge*, *Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)  The appellate court is not required to apply this exception and consider a new theory based on a pure question of law.  Whether to do so is within the appellate court's discretion.  (*Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810.)

Defendants' failure to address Chargin's estoppel argument in their respondents' brief cannot deprive this court of its discretion to consider or reject the claim *ab initio*.  The facts supporting Chargin's equitable estoppel defense were known to him at the time he opposed defendants' summary judgment motion, and he offers no justification for failing to raise it before the trial court.  We will not excuse that failure by considering the argument for the first time here.

## III.    DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.